641 A.2d 20

## TOWNSHIP OF SOUTH PARK

v.

## COUNTY OF ALLEGHENY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 1994.

Decided April 8, 1994.

George C. Diamantopulos, First Asst. Sol., for appellant.
Blaine A. Lucas, for appellee.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

COLINS, Judge.

The County of Allegheny (Allegheny County) appeals from a June 17, 1993 order of the Court of Common Pleas of Allegheny County (Common Pleas) granting the Township of South Park (South Park) injunctive relief by enjoining Allegheny County from interfering with South Park's collection of an amusement tax from the patrons of Allegheny County's two golf courses located within South Park. We affirm.

Allegheny County owns and operates two golf courses that are located within South Park; one course is an 18-hole course and the other is a nine-hole course. Both courses are operated exclusively by Allegheny County and its employees, and there are no private licensees or concessionaires who help operate or who profit from the golf courses.

South Park is a second-class township. In 1970, pursuant to its authority under The Local Tax Enabling Act, 53 P.S. §§ 6901–6924,[1] South Park enacted Ordinance No. 216, which taxed patrons engaging in amusements within its borders. South Park's definition of amusement includes the activity of golfing.

In August of 1992, South Park filed a complaint in equity and action for declaratory judgment in Common Pleas seeking to collect a 10% amusement tax from the patrons of Allegheny County's two golf courses located within South Park. South Park's complaint sought to require Allegheny County to either collect the amusement tax or allow South Park to send an employee to collect the tax directly. Allegheny County responded by filing preliminary objections to South Park's complaint, averring that its golf courses were exempt from South Park's amusement tax.

Common Pleas, by the February 22, 1993 order of the Honorable Eugene Strassburger, III, overruled Allegheny County's preliminary objections and held that South Park

1. Act of December 31, 1965, P.L. 1257, *as amended.*

could impose the amusement tax on Allegheny County's golf courses. Common Pleas also ruled that South Park could not force Allegheny County to collect the amusement tax.[2] South Park then attempted to collect the amusement tax directly from the golf course patrons, but Allegheny County refused to permit South Park to collect the tax.

South Park moved for a preliminary injunction in March of 1993, alleging that Allegheny County had unlawfully refused to permit South Park access to collect the amusement tax from the golf course patrons. Common Pleas, by the June 17, 1993 order of the Honorable Judith Friedman, granted South Park's preliminary injunction and enjoined Allegheny County from interfering with South Park's collection of the amusement tax.[3]

On June 25, 1993, Allegheny County appealed Common Pleas' injunction order to this Court. This appeal operated as an automatic supersedeas of Common Pleas' order, pursuant to Pa.R.A.P. 1736(b).[4] Accordingly, South Park, pursuant to Pa.R.A.P. 1732(a), filed an application with Common Pleas to vacate the automatic supersedeas, which application Common Pleas granted in a July 1, 1993 order. Allegheny County then requested this Court to reinstate the automatic supersedeas, but the Honorable Bernard McGinley denied the motion,

2. Because Allegheny County's preliminary objections addressed only the validity of the tax, Common Pleas refused to rule on the issue of whether Allegheny County was required to permit South Park to enter the golf course property to collect the tax.

3. Pursuant to Common Pleas' order, South Park's agents began collecting a 10% tax based on the entire greens fee and a 10% tax on the fee for golf cart rentals. Allegheny County requested a hearing on the issues of whether South Park could tax the entire greens fee and tax golf cart rentals. After a hearing, Common Pleas issued a July 15, 1993 order mandating that pursuant to Section 8(10) of The Local Tax Enabling Act, 53 P.S. § 6908(10), South Park could not tax cart rentals and could tax only on a base of 40% of the greens fee. Common Pleas' July 15, 1993 order was not appealed by either party and is, therefore, not at issue in the present matter.

4. Pa. R.A.P. 1736(b) states:

Unless otherwise ordered pursuant to this chapter the taking of an appeal by any party specified in Subdivision (a) of this rule shall operate as a *supersedeas* in favor of such party.

because Allegheny County had not shown irreparable harm. Allegheny County now appeals to this Court seeking review of Common Pleas' June 17, 1993 order granting South Park the preliminary injunction.

■ On appeal from a decree granting a preliminary injunction, an appellate court has a restricted role which does not include an inquiry into the merits of the controversy. Instead, our scope of review is limited to examining the record to determine if there were any apparently reasonable grounds for Common Pleas' action. *James T. O'Hara, Inc. v. Borough of Moosic,* 148 Pa.Commonwealth Ct. 535, 611 A.2d 1332 (1992). We will interfere with Common Pleas' decision to grant the preliminary injunction if there are no grounds supporting Common Pleas' decision or if Common Pleas relied on a rule of law that was palpably erroneous or misapplied. *Trinity Evangelical Lutheran Church of Clairton, Inc. v. May,* 98 Pa.Commonwealth Ct. 112, 510 A.2d 904 (1986).

The sole issue which Allegheny County raises on appeal is whether Common Pleas had reasonable grounds to conclude that South Park had met the burden of proof necessary to obtain a preliminary injunction. In order to obtain the preliminary injunction, South Park needed to establish that: (1) it had a clear right to relief; (2) its need for relief was immediate; and (3) it would suffer irreparable harm in the absence of the injunction. *Allegheny County v. Commonwealth,* 518 Pa. 556, 544 A.2d 1305 (1988). Allegheny County contends that South Park did not demonstrate any or all of these three requirements. However, after reviewing the record and the arguments presented by both parties, we conclude that South Park met all three requirements and was, therefore, entitled to the preliminary injunction.

## A. SOUTH PARK HAD A CLEAR RIGHT TO RELIEF

Allegheny County argues that South Park did not have a clear right to impose and collect the amusement tax on the golf course patrons. In Allegheny County's view, the amusement tax violates Article VIII, Section 2 of the Pennsylvania

Constitution and Section 204(a)(7) of The General County Assessment Law (the Law), 72 P.S. § 5020–204(a)(7).[5] We disagree.

◼ Article VIII, Section 2(a)(iii) of the Pennsylvania Constitution provides: "The General Assembly *may by law* exempt from taxation ... [t]hat portion of public property which is actually and regularly used for public purposes[.]" (Emphasis added.) Since this constitutional provision merely grants the General Assembly *discretion* to exempt certain public property from taxation, we do not see how this provision could be violated by a municipality. Therefore, South Park's amusement tax does not offend the Pennsylvania Constitution.

◼ In order to determine whether South Park's amusement tax violates Section 204(a)(7) of the Law, 72 P.S. § 5020–204(a)(7), it is necessary to examine both past and present versions of this statute. Pursuant to the discretion granted by Article VIII, Section 2(a)(iii) of the Pennsylvania Constitution, the General Assembly exempted certain property from taxation in Section 204(a)(7) of the Law. This subsection was amended in 1977. Prior to 1977, Section 204(a)(7) of the Law read:

> (a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
>
> . . . .
>
> (7) All other public property used for public purposes, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same, but this shall not be construed to include property otherwise taxable which is owned or held by an agency of the Government of the United States[.]

Interpreting the statute as it was then written, our Supreme Court, in 1969, held in *Allegheny County v. Moon Township,*

5. Act of May 22, 1933, P.L. 853, *as amended.*

436 Pa. 54, 258 A.2d 630 (1969), that a local ordinance imposing a 10% tax on Allegheny County's airport parking lot, which was owned by the county and run by a concessionaire, was invalid, because the parking lot was public property used for a public purpose which fell within the exemption of Section 204(a)(7) of the Law.

In 1977, the General Assembly changed this exemption subsection of the Law. The 1977 amendment (bold indicates post–1977 language) changed Section 204(a)(7) to exempt:

(7) All other property used for public purposes, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same, but this shall not be construed to include property otherwise taxable which is owned or held by an agency of the Government of the United States **nor shall this act or any other act be construed to exempt from taxation any privilege, act or transaction conducted upon public property by persons or entities which would be taxable if conducted upon nonpublic property regardless of the purpose or purposes for which such activity occurs, even if conducted as agent for or lessee of any public authority[;]**

Accordingly, in cases decided after 1977, the Supreme Court has been consistent in holding that business activities which would be taxable if conducted on private property are subject to a local amusement or excise tax even if conducted on public property. *Weatherly Area School District v. Whitewater Challengers Inc.*, 532 Pa. 504, 616 A.2d 620 (1992); *Moon Area School District v. Garzony*, 522 Pa. 178, 560 A.2d 1361 (1989).

In the present matter, Allegheny County takes the two-fold position that: (1) the 1969 Supreme Court decision in *Allegheny County v. Moon Township* was not overruled by the 1977 amendment to the Law or subsequent Supreme Court cases and is, therefore, controlling in the present matter and (2) the present matter is distinguishable from *Whitewater Challengers* and *Garzony,* because in those two cases the operator of the taxed activity was a private licensee of a government entity, whereas in the present case, the operator of the golf

course is actually Allegheny County itself. After reviewing all of these precedents and the wording of the 1977 amendment to the Law, we reject both parts of Allegheny County's argument.

First, the question of whether the 1969 Supreme Court decision in *Allegheny County v. Moon Township* has been implicitly overruled by subsequent cases remains unresolved. In *Whitewater Challengers, Inc. v. Weatherly School District,* 128 Pa.Commonwealth Ct. 541, 563 A.2d 1305 (1989), *reversed,* 532 Pa. 504, 616 A.2d 620 (1992), this Court took the position that *Allegheny County v. Moon Township* had not been overruled and was still the law. However, the Supreme Court subsequently reversed our decision and did so without commenting on the applicability of the *Allegheny County v. Moon Township* decision. Therefore, in this Court's view, the question of *Allegheny County v. Moon Township*'s vitality remains unresolved and awaits a clear mandate from the Supreme Court.

Even if this Court assumes arguendo that *Allegheny Township v. Moon Township* is still good law, that case does not control the present matter. The express language of the 1977 amendment to Section 204(a)(7) of the Law makes plain that the Law should not be construed to grant an exemption to any activity conducted upon public property which would be taxable if conducted on private property. In our view, the Supreme Court's decision in *Whitewater Challengers* controls, because it succeeds the 1977 amendment to the Law and is the relevant precedent most factually similar to the present matter.

In *Whitewater Challengers,* Lehigh Township and two local school districts assessed an amusement tax upon the patrons of two rafting companies which were licensed by the Commonwealth to operate whitewater rafting in state waters. The rafting companies declined to collect or remit the taxes, and the taxing authorities sued to compel the payment of taxes. The Supreme Court held that a municipality or school district could assess an amusement tax on the admission of patrons to an amusement operated substantially on state property where

the state property was located within the area of the municipality or school district.

The 1977 amendment to the Law and the Supreme Court's decision in *Whitewater Challengers* appear to end any debate, in favor of the local taxing authorities, as to whether the mere location of an amusement on public property exempts it from a local amusement tax. These authorities preclude the present appellant, Allegheny County, from asserting that the location of its golf courses on county-owned property exempts the golf course patrons from South Park's amusement tax.

Second, we conclude that Allegheny County's position that this matter can be distinguished from *Whitewater* and *Garzony*, because Allegheny County operates its own golf courses, without licensees or concessionaires, is untenable. Allegheny County is essentially asserting that because the two golf courses are located on county property and operated by county employees, it enjoys a unique tax status which precludes its patrons from being subject to the South Park amusement tax. We do not see any authority to support Allegheny County's position. The language of the 1977 amendment to Section 204(a)(7) of the Law appears to state that a normally taxable business activity located on public property is subject to a local amusement or excise tax, regardless of whether the amusement is actually operated by a public entity or a private licensee.

We conclude that the location of the golf courses on public property and the operation of the golf courses by Allegheny County employees does not exempt the golf courses from South Park's amusement tax. Therefore, Common Pleas correctly determined that South Park had a clear right to the relief requested.

## B. SOUTH PARK'S NEED FOR RELIEF WAS IMMEDIATE BECAUSE IN THE ABSENCE OF SUCH RELIEF IT WOULD SUFFER IRREPARABLE HARM

In its June 17, 1993 decision, Common Pleas determined that South Park's need for relief was immediate, stat-

ing: "Immediate irreparable harm occurs every day the tax is not collected, because there can be realistically no other opportunity to collect it after the day the user plays golf." After reviewing the record we agree with Common Pleas' cogent observation.

Allegheny County's arguments pertaining to this issue miss the point entirely. First, Allegheny County has suggested in its brief that delaying the collection of the amusement tax would not have caused irreparable harm, because South Park could have collected the tax from the golf course patrons retroactively. However, Allegheny's brief lacks any suggestion as to how this apparently impossible task could be done. This Court does not see any feasible way to collect an amusement tax from golfers once they have played and left the golf course. We conclude that South Park could not have realistically collected the amusement tax at a later time and would have suffered irreparable harm without the injunction.

Second, Allegheny County argues that South Park's need for relief was not immediate, because South Park had a budget surplus and would have been able to meet its operating expenses without the amusement tax. Additionally, Allegheny County surmises that if South Park would have experienced a shortfall in revenue without the amusement tax revenue, it could have raised other taxes to meet that shortfall. We do not find either of these arguments to be persuasive. South Park's other sources of revenue are irrelevant to the issue of whether irreparable harm exists. A party does not need to claim bankruptcy or allege that it is poised on the brink of financial ruin in order to establish irreparable harm. Similarly, South Park should not have had to expend its surplus or raise other taxes while this dispute over the amusement tax was pending, as Allegheny County suggests. In the absence of a preliminary injunction, South Park was in a position to lose unrecoverable tax revenue to which it was clearly entitled. This fact was more than sufficient to demonstrate South Park's need for immediate injunctive relief.

We conclude that South Park met all three requirements needed to obtain a preliminary injunction and find that Com-

mon Pleas had reasonable grounds to come to the same conclusion. Accordingly, Common Pleas' order granting the preliminary injunction is affirmed.

## ORDER

AND NOW, this 8th day of April, 1994, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.