CITY OF HARRISBURG and individual taxpayers Harrisburg Area Riverboat Society; William E. Kenyon, d/b/a Harrisburg Harbor Ferry; Jeffrey Palkovic, d/b/a City Island Water Golf; Harris Marine, Inc.; Eric J. Krough, d/b/a The Family Kite; Drew Miller, d/b/a Riverside Village Park; City Island Railroad Corporation; Fred R. Lamke, d/b/a Harrisburg Carriage Company; City Island Carousel, Inc.; William Firestone, d/b/a City Island Bike Rentals; Harrisburg Wave Rentals, Inc.; MMT Enterprises, Inc., d/b/a City Island Promenade & Batting Cages; and Harrisburg Senators Baseball Club, Inc.

v.

The SCHOOL DISTRICT OF the CITY OF HARRISBURG, Appellant.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1995.
Decided April 24, 1996.

Stuart L. Knade, for Appellant.

Judith Brown Schimmel, City Solicitor, for Appellees.

Before COLINS, President Judge, DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

KELLEY, Judge.

The School District of the City of Harrisburg (School District) appeals from an April 5, 1995 order of the Court of Common Pleas of Dauphin County (court of common pleas)

which affirmed a decree nisi issued by the court on January 6, 1995. The January 6, 1995 decree nisi decreed that a tax imposed by the School District upon the privilege of leasing tax exempt realty was invalid. We reverse.

On or about July 27, 1994, the City of Harrisburg and the other above captioned appellees/taxpayers [1] filed with the court of common pleas a petition for review and request for supersedeas notice of appeal from imposition of tax action for declaratory judgment (petition) pursuant to section 6 of the Local Tax Enabling Act (LTEA).[2] The petition was filed in response to Resolution 276, entitled "School District Tax on the Privilege of Leasing Tax Exempt Realty," adopted by the School District on June 27, 1994.

The petition averred that Resolution 276 was substantially deficient in that it, *inter alia,* violated the Uniformity Clause of the Pennsylvania Constitution [3] and the equal protection and due process provisions of the state and federal constitutions. In addition, the petition averred that the statutory remedy provided by section 6 of the LTEA was inadequate because the City was unable to identify twenty-five leases of tax exempt property within the School District which would be subject to the tax in question. The petition requested, *inter alia,* that the court of common pleas: (1) grant a supersedeas to stay the effective date of Resolution 276; and (2) declare Resolution 276 invalid and unconstitutional.

By order of July 27, 1994, the court of common pleas granted the City's request for a supersedeas. After the filing of a stipulation of facts and briefs, the court of common pleas held a hearing on the petition on December 20, 1994. On January 6, 1995, the court of common pleas issued an adjudication and decree nisi declaring Resolution 276 invalid.

The relevant facts, as stipulated by counsel on behalf of the parties herein and set forth in the court of common pleas January 6, 1995 adjudication, are as follows:

1. The City of Harrisburg (City) is a municipal corporation organized and existing under the Third Class City Code, Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 35101–39951, and operating pursuant to the Optional Third Class City Charter Law, Act of July 15, 1957, P.L. 901, 53 P.S. §§ 41101–41625, with its principal place of business located at the Rev. Dr. Martin L. King, Jr., City Government Center, 10 N. Second Street, Harrisburg, Dauphin County, Pennsylvania.

2. The City owns an island in the Susquehanna River within the boundaries of the Harrisburg School District (School

---

1. The City and the appellees/taxpayers will hereinafter be referred to collectively as the "City".

2. Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6906. Section 6 of the LTEA, *Appeals by taxpayers,* provides, in pertinent part, that:

    No tax levied for the first time by any political subdivision to which this act applies shall go into effect until thirty days from the time of the adoption of the ordinance or resolution levying the tax. Within said thirty days ... taxpayers of the political subdivision not less than twenty-five in number aggrieved by the ... resolution shall have the right to appeal therefrom to the court of quarter sessions of the county upon giving bond.... The petition shall set forth the objections to the tax and the facts in support of such objections....

    No such appeal shall act as a supersedeas unless specifically allowed by the court to which the appeal is taken or a judge thereof.

    *       *       *       *       *       *

    It shall be the duty of the court to declare the ordinance and the tax imposed thereby to be valid unless it concludes that the ordinance is unlawful or finds that the tax imposed is excessive or unreasonable; but the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the rates of the tax. The court may declare invalid all or any portion of the ordinance or of the tax imposed or may reduce the rates of tax.

3. Article VIII, Section 1 of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1.

District) which has been dedicated to park purposes and which is known as "City Island."

3. The persons identified in the caption above are all either adult residents of the Commonwealth of Pennsylvania or Pennsylvania corporations who have been granted permits by the City to operate a recreation-based business on City Island (hereinafter "Taxpayers Appellants").

4. The fees for said permits are determined on a case-by-case negotiated basis and are intended to defray the cost to the City of the upkeep of said City Island.

5. The School District is a public school district of the second class, existing and operating pursuant to the provisions of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 1–101 et seq., which maintains its principal administrative offices at 1201 North Sixth Street, Harrisburg, Dauphin County, Pennsylvania, and the governing body of which is its board of school directors (School Board).

6. For the development of the 1994–95 School District General Fund Budget, an ad hoc committee was formed by the School Board to advise it on the new budget, which committee was charged with exploring, evaluating and formulating ideas, concepts and recommendations for both revenue sources and expenditure philosophies and parameters.

7. The ad hoc committee was made up of three members of the School Board and 15–20 members of the community.

8. In May 1994, the committee members submitted to the School Board a draft of their budget recommendations.

9. On May 25, 1994, the Superintendent of Schools submitted a tentative proposed budget to the School Board, which proposal reflected many of the elements of the ad hoc committee's recommendations.

10. The tentative proposed budget was the subject of public hearing, review and discussion by the School Board.

11. The Superintendent submitted to the School Board a proposed final budget on June 27, 1994, which budget was adopted by the School Board on that date at a special legislative meeting.

12. Concurrently with the adoption of that budget and in accordance with revenue projections contained therein, the School Board enacted a real estate tax increase of 1.53 mills and two new taxes, including a tax on parking transactions and a tax on the privilege of leasing tax-exempt property.

13. The tax on the privilege of leasing tax-exempt realty was enacted as Resolution No. 276, entitled, "School District Tax on the Privilege of Leasing Tax Exempt Realty" (hereinafter "Resolution 276").

14. Resolution 276 imposes a ten percent (10%) tax on the privilege of leasing real estate which is listed on the assessment rolls as exempt from the payment of real estate taxes excluding, however, property used for residential dwelling purposes.

15. The tax upon the privilege of leasing tax-exempt realty was initially suggested by two citizen members of the ad hoc budget committee.

16. Neither the School District nor the City has ever previously imposed a tax on the privilege of leasing real estate, tax exempt or otherwise.

17. The City currently receives approximately $50,000 in City Island permit fees, one-half of this amount from the Harrisburg Baseball Club, Inc.

18. The two citizen members of the ad hoc committee who recommended the passage of Resolution 276 reviewed records of the Dauphin County Assessment Office, which maintains a listing of all real estate parcels enjoying tax exempt status and the basis for such exemption.

19. From the list of tax exempt real estate, the two members calculated a "rough estimate" of the likely percentage of the total assessed value of all exempt property that would reflect the rental value of property leased to private or commercial entities that would not otherwise enjoy exempt status for themselves or the operations for which the property was used.

20. Based upon the estimates provided by the committee, the adopted School

Board budget anticipated that $120,000 in additional revenues could be raised from the collection of this tax for the 1994–95 school year.

21. All revenues expected to be derived from the tax was appropriated to the General Operating Budget of the School District.

22. Forty-nine and 29/100 percent of the 1994–95 General Operating Budget of the School District must be funded by local revenue sources.

23. The revenue produced by taxes imposed under the authority of the Local Tax Enabling Act (LTEA) reduces the School District's reliance on real estate taxes.

24. Among the School Board's considerations in adopting Resolution 276 was its assumption that the consideration paid for leasing tax-exempt property does not reflect the payment of real estate taxes by the owner of the property.

25. The School District did not compile a list of all leases which would be subject to the tax prior to passage of Resolution 276.

26. In the absence of empirical collection data, the School District intends initially to rely primarily on voluntary reporting and compliance to collect the tax imposed by Resolution 276.

27. The School District intends that this tax apply to all leases of tax exempt real estate, including property owned by the Commonwealth, the City, the County, the Harrisburg Redevelopment Authority, the Dauphin County Industrial Development Authority and other political subdivisions, by persons or entities who would not otherwise enjoy tax-exempt status.

28. As examples of leases potentially covered by the tax, the School District cites leases by businesses operating in the Chromalloy Building on Cameron Street owned by the Commonwealth, retail stores in the 333 Market Street Building, the cafeteria in the main Capitol Annex, the Forum facility, the State Farm Show Complex, and the like.

29. According to records maintained by the Dauphin County Tax Assessment Office, the total aggregate assessed value of real estate within the School District is $1,501,041,300.00. Of this amount, $633,-749,000.00 or 42% of the total, is listed as exempt from real estate taxes.

30. The boundaries of the School District and the City are coterminous.

31. The City bills and collects School District real estate taxes.

In its January 6, 1995 adjudication, the court of common pleas addressed the issues of whether the court had proper equity jurisdiction to entertain the action and whether Resolution 276 was a legally valid and constitutional tax. First, the court of common pleas concluded that it had equity jurisdiction in this matter because the City, in addition to raising the issue of whether the tax was valid under the General County Assessment Law (GCAL),[4] had raised a substantial constitutional issue as to whether Resolution 276 violated the Uniformity Clause of the Pennsylvania Constitution.

Second, the court of common pleas concluded that the tax imposed by the School District pursuant to Resolution 276 was invalid. The court of common pleas pointed out that while the LTEA provides broad discretion to local tax authorities, if the result of a taxing scheme is the imposition of substantially unequal tax burdens on persons otherwise similarly situated, the tax is unconstitutional. The court of common pleas found that the subject tax was imposed only on leases of tax exempt realty, rather than

---

4. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§ 5020–1–5020–602. Specifically, the City alleged that the privilege of leasing non-exempt realty was not taxable pursuant to section 204(a)(7) of the GCAL. Section 204(a)(7) provides that public property used for public purposes, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same shall be exempt from all county, city, borough, town, township, road, poor and school tax.

72 P.S. § 5020–204(a)(7). Section 204(a)(7) provides further that the GCAL shall not be "construed to exempt from taxation any privilege, act or transaction conducted upon public property by persons or entities which would be taxable if conducted upon nonpublic property regardless of the purpose or purposes for which such activity occurs, even if conducted as agent for or lessees of any public authority."

on all leases of real estate. Since the privilege of leasing property, the court concluded, is not a taxable privilege if conducted on non-public property, Resolution 276 is a disguised attempt to impose a tax on tax exempt property. Therefore, the court of common pleas held that leases of tax exempt realty are not legitimate classifications for tax purposes; accordingly, the tax was invalid.

The School District filed a motion for post-trial relief (exceptions to decree nisi). On April 5, 1995, the court of common pleas issued an order affirming the January 6, 1996 decree nisi. It is from this order that the School District now appeals to this court.

On appeal herein, the School District raises the following issues:

1. Should the court of common pleas have dismissed the petition and appeal for failure to properly pursue an adequate and exclusive statutory remedy which precluded resort to equity?

2. Does the LTEA empower the School District to levy a tax upon the privilege of leasing tax exempt property?

3. Was the conclusion of the court of common pleas that the tax violates the uniformity requirements of the Pennsylvania Constitution or the Equal Protection Clause of the United States Constitution supported by substantial evidence?

## I. ISSUE 1—WHETHER THE CITY HAS AN EXCLUSIVE AND ADEQUATE STATUTORY REMEDY AT LAW.

The School District argues that the court of common pleas should have dismissed the City's petition and appeal brought pursuant to LTEA for failure to properly pursue an exclusive and adequate statutory remedy which precludes resort to equity. The School District contends that the City has failed to factually demonstrate that it had failed after a good faith effort to join with twenty-four other aggrieved taxpayers in order to properly pursue the exclusive statutory remedy found in section 6 of the LTEA or that the statutory remedy was otherwise inadequate under the circumstances. The availability, the School District argues, of a remedy under the LTEA precludes resort to

equitable remedies unless it is shown that the statutory remedy is inadequate *and* that the challenge raises a substantial constitutional question.

■ To support its contentions, the School District relies on this court's decision in *Lashe v. Northern York County School District,* 52 Pa.Cmwlth. 541, 417 A.2d 260 (1980). In *Lashe,* this court first pointed out the following well-settled rules in Pennsylvania:

[W]here the Legislature provides a statutory remedy which is mandatory and exclusive, equity is without power to act.... [W]here a remedy is provided by an act of assembly, the directions of the legislation must be strictly pursued and such remedy is exclusive.

The Pennsylvania courts recognize, however, that equity does not lack subject matter jurisdiction where the validity of a taxing ordinance is questioned. The rule may be stated that, since constitutional issues can be raised and considered in a statutorily prescribed proceeding, the issue to be resolved to determine whether equity will take jurisdiction is the adequacy of the statutory remedy under the circumstances.

[T]he more clearly it appears that the [constitutional] question raised goes directly to the validity of the statute the less need exists for the agency involved to throw light on the issue through exercise of its specialized fact-finding function or application of its administrative expertise.

*Lashe,* 417 A.2d at 263–64 (citations omitted).

With these principles in mind, we dismissed appellants' appeal in *Lashe* challenging the validity of an occupation tax resolution adopted by the Northern York County School District pursuant to the authority granted by the LTEA. The basis for our dismissal was the appellants' failure to allege that the statutory remedy provided in section 6 of the LTEA was unavailable or inadequate or that irreparable harm would result from the pursuit of the statutory route. *Id.* 417 A.2d at 265. We noted that:

The remedy provided by section 6 requires twenty-five persons in order to file an appeal. While it may be possible that a

party would be unable to secure the required number, a good faith attempt must be made.... If a party makes a good faith attempt to secure twenty-five persons and cannot, this would demonstrate the inadequacy of the statutory remedy as to them. However, equity cannot countenance a party who ignores the statutory remedy.

*Id.* at 265 n. 4.

We determined further in *Lashe* that the constitutional challenge raised by appellants, alleging that the ordinance was void for vagueness due to a failure to define occupation, could have been raised in the administrative proceeding. *Id.* at 265. Therefore, this court held that the court of common pleas lacked jurisdiction to decide the issue raised by appellants. *Id.*

The School District argues that our decision in *Lashe* requires a showing that the statutory remedy is inadequate and if this showing is lacking, an appellant may not proceed in equity even if the appellant raises a substantial constitutional question. However, the School District points out that this court in a later decision again addressed the issue of whether a court of common pleas had subject matter jurisdiction in an equity case because the appellant had an adequate remedy at law, specifically the statutory remedy found in section 6 of the LTEA, which he failed to pursue. *Borough of Crafton v. Gaitens,* 112 Pa.Cmwlth. 147, 534 A.2d 1149 (1987), *petition for allowance of appeal denied,* 520 Pa. 584, 549 A.2d 916 (1988).

In *Gaitens,* we reviewed the Pennsylvania Supreme Court's decision in *Borough of Green Tree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974), wherein the Supreme Court set forth the following test to be applied to determine whether equity jurisdiction, to consider a constitutional attack on a statute, was appropriate when there exists a statutory remedy:

[T]he mere fact that a constitutional question is raised as to the validity of a statute does not, without more, vest jurisdiction in a court of equity to adjudicate. The additional element required to confer equitable jurisdiction is either the absence of a statutorily-prescribed remedy or, if such a remedy exists, then a showing of its inadequacy in the circumstances.

*Gaitens,* 534 A.2d at 1151 *quoting Borough of Green Tree,* 459 Pa. at 276, 328 A.2d at 823.

Moreover, in *Gaitens,* we pointed out that the Supreme Court in *Borough of Green Tree* "then applied a balancing test to determine the adequacy of the statutory remedy and determined that because of the *directness* of the attack on the taxing statute '[w]hatever benefit might be derived from [pursuing the statutory remedy] ... would be far outweighed by the inconvenience, delay and expense involved.'" *Id., quoting Borough of Green Tree,* 459 Pa. at 281, 328 A.2d at 825. In addition, we stated that "the Pennsylvania Supreme Court has upheld equity jurisdiction when a statutory remedy is present, 'where the constitutional challenge was found to be a "frontal attack" upon the validity of the statute.'" *Gaitens,* 534 A.2d at 1152 *citing Scott v. Palmerton Area School District,* 63 Pa.Cmwlth. 528, 439 A.2d 859, 860, *aff'd per curiam,* 502 Pa. 431, 466 A.2d 1029 (1983).

We then agreed with the court of common pleas that the statutory remedy found in section 6 of the LTEA was inadequate under the circumstances. *Gaitens,* 534 A.2d at 1152. We held that:

Not only does section 6 of the LTEA not provide a cause of action for an individual taxpayer, but in addition, Gaitens makes a *direct* constitutional attack on the validity of the ordinance *in its entirety.* We do not agree with the Borough's contention that Gaitens was required to prove that he had attempted ... to find twenty-four other taxpayers to join him in an appeal in order for the statutory remedy to be considered inadequate. Under the circumstances of this case, it was enough, because of the direct attack on the constitutionality of the tax ordinance, for Gaitens to show that the statutory remedy does not provide him a cause of action.

*Id.*

The School District contends that our decision in *Gaitens* may be read as eliminating any burden to demonstrate inadequacy and requiring that the LTEA remedy always be

presumed inadequate as to any single taxpayer. Therefore, the School District urges this court to resolve the apparent conflict between our decisions in *Lashe* and *Gaitens* in favor of the sounder rule espoused in *Lashe.*

We disagree with the School District that our decision in *Gaitens* may be read as eliminating any burden to demonstrate inadequacy and requiring that the LTEA remedy always be presumed inadequate as to any single taxpayer. As pointed out by this court in *Gaitens,* our Supreme Court has held that if a statutory remedy exists, an appellant must show its inadequacy *under the circumstances* of the situation at hand. *Borough of Green Tree.* In *Gaitens,* we clearly applied a balancing test, as our Supreme Court did in *Borough of Green Tree,* to determine that the direct constitutional attack on the validity of the ordinance in its entirety outweighed Gaitens' need to show that the statutory remedy did not provide him a cause of action.

In *Lashe,* this court also applied a balancing test and weighed the appellants' failure to pursue the statutory remedy against the constitutional challenge raised by the appellants therein. We held that the constitutional attack did not question the power to tax and could easily be resolved in an administrative proceeding. *Lashe.*

Accordingly, we see no conflict between our decisions in *Lashe* and *Gaitens.* An appellant who possesses a statutory remedy and chooses to proceed in equity must show the inadequacy of the remedy under the circumstances. *Borough of Green Tree.* Moreover, in determining the adequacy of the remedy under the circumstances, the court must apply a balancing test such as weighing whatever benefit might be derived from pursuing the statutory remedy against the inconvenience, delay and expense involved. *Id.*

■■■ Therefore, we hold that where the validity of a taxing ordinance is questioned, an appellant who brings an appeal, in equity, when a statutory remedy exists is required to show the inadequacy of the remedy in order to proceed in equity. Of course, the scales may be tipped in favor of proceeding in equity if a substantial constitutional challenge is raised which constitutes a frontal or direct attack to the validity of the ordinance or statute.

Accordingly, in the present situation, we must determine if the statutory remedy provided by section 6 of the LTEA is inadequate under the circumstances. The School District contends that the City has presented no evidence of its effort to satisfy the statutory requirement of twenty-five taxpayers and that the "so-called" constitutional questions raised in this action cannot properly be considered substantial.

In response, the City argues that it did in fact make an effort to identify twenty-five taxpayers affected by Resolution 276. The City points out that it averred in its petition that it was unable to identify the statutory number of challengers. Further, the City contends that the City had asked, in its interrogatories, that the School District provide a list of those tax exempt leases that fall within the purview of the tax. The City contends that in the response thereto, the School District indicated that it had never compiled a list of leases subject to the tax.

■■■ We believe that, under the circumstances, the City has shown that the statutory remedy available in section 6 of the LTEA is inadequate. The record shows that the City made a good faith attempt to secure twenty-five taxpayers. *Lashe.* In addition, the constitutional challenge to Resolution 276 based on uniformity and equal protection by the City is a direct attack on the resolution itself and the School District's power to impose the tax. Therefore, whatever benefit may be derived from requiring the City to pursue its statutory remedy is outweighed by the substantial constitutional issues raised by the City regarding Resolution 276.

## II. ISSUE 2—WHETHER THE SCHOOL DISTRICT MAY LEVY A TAX UPON THE PRIVILEGE OF LEASING TAX EXEMPT PROPERTY PURSUANT TO THE LTEA.

Next, the School District argues that the court of common pleas erred in concluding that the power to levy taxes must be strictly construed. The School District contends that under the LTEA the scope of the lawful

subjects of tax is to be construed broadly. The School District argues further that due to the specific exception to exempt status found in section 204(a)(7) of the GCAL, the fact that property being leased is exempt from real estate taxes because of its owner-·ship does not affect the taxability of essentially commercial transactions or privileges occurring thereon.

In response, the City argues that the School District's contention that section 2 of the LTEA gives it unlimited power to tax ignores the tax exemptions found in section 204 of the GCAL. The City contends that historically, public property used for a public purpose has been exempt from all local taxes, notwithstanding the fact that those operating a business thereon may derive a profit or that patrons utilizing the premises are required to pay reasonable charges to avail themselves of the services offered. The City argues that the language of section 204(a)(7) of the GCAL indicates that it was intended to make taxable those activities which *would*, not *could*, be subject to a local tax if the activity were performed on non-tax exempt property.

The LTEA permits the School District herein to levy, assess, or collect certain taxes or to provide for the same for general revenue purposes. Pursuant to section 2 of the LTEA the School District may

> in [its] discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions....

53 P.S. § 6902.

■ Therefore, we agree that the School District may, in its discretion, impose certain taxes for general revenue purposes pursuant to the LTEA. The fact that a particular tax is not mentioned in section 2 of the LTEA does not automatically negate a taxing authority's power to impose such a tax. *F.J. Busse Co. v. City of Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971). However, where the General Assembly delegates the right to tax, the grant of such right is to be strictly construed, and not extended by implication. *Hanek v. Cities of Clairton*, 24 Pa. Cmwlth. 69, 354 A.2d 35 (1976).[5]

In the present case, we believe that the court of common pleas erred in concluding that the tax on the privilege of leasing tax exempt realty imposed by the School District is invalid. The court of common pleas relied, *inter alia*, on *Gulf Oil Corp. v. Middletown Area School District*, 92 Dauph. 123, 50 Pa.D. & C.2d 247 (C.P.Pa.1969) to support its decision.

In *Gulf Oil*, the Middletown Area School District enacted a resolution, pursuant to the LTEA, imposing a tax on the privilege of leasing tax exempt real estate. Gulf Oil and the Pennsylvania Turnpike Commission sought to enjoin the imposition of the tax. Gulf Oil had leased a parcel of property along the Pennsylvania Turnpike from the Turnpike Commission. Thereafter, Gulf Oil constructed a service station and restaurant on the property to service the motorists travelling the turnpike.

In determining that the subject tax was unlawful and void as it applied to Gulf Oil and the Turnpike Commission, the chancellor in *Gulf Oil* stated:

> But even though the chancellor were persuaded that this tax is a true privilege tax and that the privilege of leasing tax-exempt realty is a proper subject of tax under the enabling act, still we would be obliged to strike the tax down as it affects plaintiffs here.

*Borough of Brookhaven v. Century 21*, 57 Pa. Cmwlth. 211, 425 A.2d 466 (1981). Local taxing authorities have the right and power to enact only those tax ordinances and resolutions which are authorized by the LTEA and, if the ordinance or resolution conflicts with the enabling statute, it is to that extent void. *Borough of Brookhaven*.

---

**5.** It is well settled that taxing statutes are strictly construed against the government: if there is a reasonable doubt as to its construction or its application to a particular case, that doubt must be resolved in favor of the taxpayer. *Leigh v. Commonwealth*, 168 Pa.Cmwlth. 12, 648 A.2d 1346 (1994), aff'd, *Leigh v. Board of Finance and Revenue*, 541 Pa. 187, 661 A.2d 1374 (1995);

The record is clear ... that the tax in question would eventually be a burden on the Turnpike Commission.

Under the authority expressly granted by the Pennsylvania Constitution the legislature has granted a tax exemption in respect to property of the Turnpike Commission when used for a public purpose.

\* \* \* \* \* \*

[It] is obvious that the burden will eventually be upon the authority in future negotiations. Taxes will affect the rental and "it would be strange for the Legislature to enable the Authority to choose among several modes of rendering this public service and then encumber the choice with tax consequences."

*Gulf Oil,* 92 Dauph. at 128–30 (citations omitted).

■ As determined by the chancellor in *Gulf Oil,* we believe herein that the tax imposed by the School District on the privilege of leasing tax exempt realty is a true privilege tax and a proper subject of tax under the LTEA. However, in light of the current language of section 204(a)(7) of the GCAL,[6] we disagree with the court of common pleas' conclusion that the ultimate holding in *Gulf Oil* that such a tax is invalid, is applicable herein.

Section 204(a)(7) of the GCAL exempts from local taxation:

[a]ll other public property used for public purposes ... but this shall not be construed to ... exempt from taxation any privilege, act or transaction conducted upon public property by persons or entities which would be taxable if conducted upon nonpublic property regardless of the purpose or purposes for which such activity occurs, even if conducted as agent for or lessee of any public authority.

72 P.S. § 5020–204(a)(7).

■ It is clear from the express language of section 204(a)(7) that the GCAL should not be construed to grant an exemption to any activity conducted upon public property which would be taxable if conducted on private property. *South Park Township v. Allegheny County,* 163 Pa.Cmwlth. 273, 641 A.2d 20 (1994), *petition for allowance of appeal denied,* 541 Pa. 647, 663 A.2d 697 (1995). In other words, a normally taxable business activity conducted on exempt public property is subject to taxation.

■ In the instant matter, there is no dispute that Resolution 276 purports to tax the privilege of leasing real property which is currently exempt from real estate taxation.[7] The tax is not a property tax or a disguised property tax. The measure of the tax is a percentage of the rental consideration, not the assessed value of the property.

The City contends that in order for the tax to be valid, there must be an existing legitimate tax on the privilege of leasing private property. Presently, the School District does not impose a tax on the privilege of leasing private property or non-exempt public property. Therefore, the City argues, the privilege of leasing real property is not an activity that is normally taxable.

---

6. Section 204(a)(7) was amended in 1977. Prior to 1977, section 204(a)(7) of the GCAL read:
   (a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
   (7) All other public property used for public purposes, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same, but this ⌐ ₁₀₁ ₀e construed to include property otherwise taxable which is owned or held by an agency of the Government of the United States[.]

7. Tax exempt realty is defined in Resolution 276 as:
   all real estate within the School District, whether improved or unimproved, which in the taxable period is listed as exempt property not subject to real estate taxation upon the assessment rolls of the Board for the Assessment and Revision of Taxes of Dauphin County, Pennsylvania, excluding, however, single family homes, apartments and dormitories that are used exclusively for residential dwelling purposes.
   Reproduced Record (R.) at p. 30a.
   The term "taxpayer" is defined in Resolution 276 as "any person who leases tax exempt realty within the School District from the owner thereof or the owner's duly authorized agent, and who is required to pay the tax imposed by this Resolution." *Id.* Section 301 of Resolution 276 "imposes and levies upon all persons who lease tax exempt realty within the School District during all or any part of the taxable period a tax upon the privilege thereof." *Id.*

■ We disagree with the City's narrow interpretation of the language of section 204(a)(7). The language of this section clearly states "which would be taxable". The language does not indicate that a similar tax upon the same activity being conducted upon private property must be in place. As stated in section 2 of the LTEA, local taxing authorities may, *in their discretion,* levy certain taxes. 53 P.S. § 6902. Consequently, it is the local taxing authority's choice as to which statutorily authorized taxes it wishes to impose.

Accordingly, we hold that the court of common pleas erred in concluding that the tax imposed by Resolution 276 on the privilege of leasing tax exempt realty is invalid as contravening the GCAL.

### III. ISSUE 3—WHETHER THE SUBJECT TAX VIOLATES THE UNIFORMITY REQUIREMENTS OF THE PENNSYLVANIA CONSTITUTION OR THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION.

Finally, the School District contends that the court of common pleas erred in concluding that Resolution 276 contravenes the Uniformity Clause of the Pennsylvania Constitution by taxing only leases of tax exempt realty. We agree.

■ The Uniformity Clause of the Pennsylvania Constitution applies to all species of taxes. *Amidon v. Kane,* 444 Pa. 38, 279 A.2d 53 (1971). Absolute equality or perfect uniformity are not required in a taxing scheme. *Mandl v. Commonwealth,* 161 Pa.Cmwlth. 481, 637 A.2d 703 (1994), *aff'd,* 539 Pa. 277, 652 A.2d 297 (1995). Challenges to the constitutionality of a tax measure are reviewed under a rational basis standard, and the tax statute is constitutional on equal protection or uniformity grounds if there can be discerned some concrete justification for treating a relevant group of taxpayers, as members of distinguishable classes, to different tax burdens. *Robison v. Fish and Boat Commission,* 166 Pa.Cmwlth. 97, 646 A.2d 43 (1994), *petition for allowance of appeal denied,* 540 Pa. 588, 655 A.2d 519 (1995). A taxpayer challenging the constitutionality of a tax bears the burden of demonstrating that the classification, made for purposes of taxation, is unreasonable. *Id.*

■ With these principles in mind, we hold that the subject tax herein does not violate the Uniformity Clause of the Pennsylvania Constitution or the Equal Protection Clause of the United States Constitution. The tax uniformly applies to all who share the privilege of leasing tax exempt property. Every taxpayer in the class is required to pay ten percent of the rental consideration paid to the owner of the tax exempt property.

Moreover, the classification is reasonable. The School District is required to provide forty-nine and 29/100 percent of its general operating budget through local revenue sources. This task is a formidable one since forty-two percent of the real estate located within the School District is owned by entities immune or exempt from the payment of real estate taxes. While these properties are owned by tax exempt entities, there is a category of commercial transactions involving these properties wherein the School District may derive general revenues.

Accordingly, the April 5, 1995 order of the court of common pleas affirming its January 6, 1995 decree nisi is reversed.

### ORDER

NOW, this 24th day of April, 1996, the order of the Court of Common Pleas of Dauphin County, dated April 5, 1995, at No. 5192 Equity, is reversed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The majority opinion concludes that the School District Tax imposed upon lessees of tax exempt property under Resolution 276 does not violate the Uniformity Clause of the Pennsylvania Constitution and the Equal Protection Clause of the United States Constitution. Because there is no concrete or legitimate justification for imposing the tax only upon lessees of tax exempt property, while not imposing that tax upon lessees of other property within the City of Harrisburg, I disagree.

Although the Uniformity and Equal Protection Clauses do not require absolute equality and uniformity in the imposition of taxes, the classification set forth in a taxing scheme must be based upon some legitimate distinction between the classes that provides a non-arbitrary, reasonable and just basis for the difference. *Pennsylvania Builders Association v. Department of Revenue*, 122 Pa. Cmwlth. 493, 552 A.2d 730 (1989), *aff'd*, 524 Pa. 134, 569 A.2d 928 (1990). If a taxing scheme results in the imposition of substantially unequal tax burdens upon persons otherwise similarly situated, then the scheme will be deemed unconstitutional. *Commonwealth v. Staley*, 476 Pa. 171, 381 A.2d 1280 (1978). In other words, for a taxing scheme to be uniform, the scheme's classification of the taxpayers must be reasonable, and the tax must be applied with uniformity upon similar kinds of business or property with substantial equality of the tax burden upon all members of the class. *Fidelity Bank, N.A. v. Department of Revenue*, 165 Pa. Cmwlth. 524, 645 A.2d 452 (1994).

The relevant class of taxpayers at issue in the present case are those entities or individuals that lease property within the City of Harrisburg. By enacting Resolution 276, the School District imposed a ten percent tax on the privilege of leasing real estate only if that real estate is listed on the assessment rolls as being exempt from the payment of real estate taxes. Resolution 276 imposes no tax on the privilege of leasing real estate that is not tax exempt. Under this scheme, therefore, there is an unequal tax burden between the class of lessees that is based upon the type of property that is leased. Despite this disparity in tax liability, however, the School District does not offer and the majority does not find a reasonable, legitimate and concrete justification for the distinction made under Resolution 276. Accordingly, I dissent.

McGINLEY and FRIEDMAN, JJ., join in this dissent.