963 A.2d 1261

**LYNNEBROOK AND WOODBROOK ASSOCIATES, L.P., By and Through its General Partner, LYNNEBROOK MANOR, INC., Appellants**

v.

**BOROUGH OF MILLERSVILLE, Appellee.**

Supreme Court of Pennsylvania.

Argued May 12, 2008.

Decided Dec. 17, 2008.

Lee A. Stivale, Louis M. Kodumal, Paul Joseph Toner, Law offices of Vincent B. Mancini & Associates, Media, for Lynnebrook and Woodbrook Associates and Lynnebrook Manor, Inc., appellants.

Josele Cleary, Morgan, Hallgren, Crosswell & Kane, P.C., Lancaster, for Borough of Millersville, appellee.

Charles Bernard Haws, Magda Bonutti Szabo, Barley Snyder, L.L.C., Reading, for Borough of Kutztown, appellee amicus curiae.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

### OPINION

Justice TODD.

In this appeal, we are asked to determine whether the Commonwealth Court erred in upholding the trial court's determination that Millersville Borough Ordinance No. 2004–5, levying a $30 tax on the consummation of residential lease transactions, was permitted under Section 2(1) of the Local Tax Enabling Act ("LTEA").[1] For the following reasons, we reverse.

1. Act of December 31, 1965, P.L. 1257, No. 511. The LTEA was amended effective July 2, 2008, and the relevant portion now appears

The facts of this case are straightforward. On October 12, 2004, the Borough of Millersville ("Millersville") passed Borough Ordinance 2004-5 ("the Ordinance"). The Ordinance provides, in pertinent part, that "A tax is hereby levied and imposed, for general Borough purposes, on every Lease Transaction, at the rate of thirty ($30.00) dollars." Ordinance at 3, 24 Millersville Borough Code § 604. A lease transaction is defined as "a transaction under which an Owner, either directly or through an agent ... and any other person or persons enter into an agreement under which such person or persons is/are allowed to become Occupant(s) of a Residential Rental Unit for a period equal to or less than one year." Ordinance at 3.

On July 15, 2005, Appellant Lynnebrook and Woodbrook Associates ("Lynnebrook")—a property management company which owns and administers 178 rental units within Millersville—filed a complaint seeking a declaratory judgment that the Ordinance is in violation of Section 2(1) of the LTEA and a refund of taxes paid.

The parties subsequently cross-moved for judgment on the pleadings. The Honorable Paul K. Allison of the Lancaster County Court of Common Pleas granted the motion filed by Millersville and denied the motion filed by Lynnebrook. Trial Ct. Order, 10/12/05. Judge Allison noted our decision in *City of Harrisburg v. Sch. Dist. of the City of Harrisburg*, 551 Pa. 295, 710 A.2d 49 (1998), permitting the imposition of a tax on the privilege of leasing real estate, and the decision by the Commonwealth Court in *Susquehanna Coal Co. v. Mount Carmel Area Sch. Dist.*, 798 A.2d 321 (Pa.Cmwlth.2002), upholding a 10% tax imposed by the district on the rental income from leases on unimproved land. On that basis, he concluded the Ordinance did not violate the LTEA.

in 53 P.S. § 6924.301.1(f)(1). Act of June 21, 2007, P.L. 197, No. 32. All citations are to the statute as effective on July 15, 2005, when Lynnebrook filed its complaint. *See* Act of July 7, 2005, P.L. 149, No. 40, § 25. The version of the LTEA in effect at the time Millersville's taxing ordinance was passed is substantially the same, and neither party argues the result of our analysis would be different under the LTEA as codified at the time Millersville first passed its ordinance.

Lynnebrook appealed, and a three-judge panel of the Commonwealth Court affirmed. The majority noted that Section 2(1) of the LTEA opens by prohibiting taxes on the "transfer of real property" under certain circumstances. Based on the canon of statutory construction *ejusdem generis,* or "of the same kind or class," the court concluded this introductory clause applied to every succeeding clause in Section 2(1). The court then held that the residential lease transactions in question do not constitute "transfer[s] of real property." Accordingly, the court determined the Ordinance did not violate the LTEA, and thus that summary judgment was appropriately granted in favor of Millersville. *Lynnebrook & Woodbrook Assoc. v. Borough of Millersville,* 911 A.2d 196 (Pa.Cmwlth. 2006). The court emphasized that we upheld municipalities' right to tax the privilege of leasing public property in *City of Harrisburg, supra. Lynnebrook,* 911 A.2d at 199–200. Judge Simpson concurred in the result without filing an opinion. Lynnebrook sought allowance of appeal, and we granted allocatur on the sole issue of whether an annual tax on residential lease transactions is permissible under the LTEA.

We begin our review by considering the relevant statutory language *in toto.*[2] *See Housing Authority of Chester County v. Pennsylvania State Civil Service Commission,* 556 Pa. 621, 640, 730 A.2d 935, 945 (1999). Section 2 of the LTEA both invests municipalities with taxing authority and, in its 13 subsections, restricts or eliminates that authority as to taxes on certain types of goods or transactions. The lease provision is found in subsection (1) which, together with the introductory portion of Section 2, reads:

**The duly constituted authorities of the following political subdivisions,** cities of the second class, cities of the second class A, cities of the third class, boroughs, towns, townships of the first class, townships of the second class, school districts of the second class, school districts of the

2. As the instant case poses a question of statutory construction, which is a pure question of law, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Bradley,* 575 Pa. 141, 149 n. 2, 834 A.2d 1127, 1131 n. 2 (2003).

third class, and school districts of the fourth class, in all cases including independent school districts, **may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions, and upon the transfer of real property, or of any interest in real property, situate within the political subdivision levying and assessing the tax, regardless of where the instruments making the transfers are made, executed or delivered or where the actual settlements on such transfer take place.** The taxing authority may provide that the transferee shall remain liable for any unpaid realty transfer taxes imposed by virtue of this act. Each local taxing authority may, by ordinance or resolution, exempt any person whose total income from all sources is less than twelve thousand dollars ($12,000) per annum from the per capita or similar head tax, occupation tax and emergency and municipal services tax, or earned income tax, or any portion thereof, and may adopt regulations for the processing of claims for exemptions. **Such local authorities shall not have authority by virtue of this act:**

(1) **To levy, assess and collect** or provide for the levying, assessment and collection of **any tax on** the transfer of real property when the transfer is by will or mortgage or the intestate laws of this Commonwealth or on a transfer by the owner of previously occupied residential premises to a builder of new residential premises when such previously occupied residential premises is taken in trade by such builder as part of the consideration from the purchaser of a new previously unoccupied single family residential premises or on a transfer between corporations operating housing projects pursuant to the housing and redevelopment assistance law and the shareholders thereof, or on a transfer between nonprofit industrial development agencies and industrial corporations purchasing from them, or on transfer to or

from nonprofit industrial development agencies, or on a transfer between husband and wife, or on a transfer between persons who were previously husband and wife but who have since been divorced; provided such transfer is made within three months of the date of the granting of the final decree in divorce, or the decree of equitable distribution of marital property, whichever is later, and the property or interest therein, subject to such transfer, was acquired by the husband and wife, or husband or wife, prior to the granting of the final decree in divorce, or on a transfer between parent and child or the spouse of such a child, or between parent and trustee for the benefit of a child or the spouse of such child, or on a transfer between a grandparent and grandchild or the spouse of such grandchild, or on a transfer between brother and sister or brother and brother or sister and sister or the spouse of such brother or sister, or on a transfer to a conservancy which possesses a tax-exempt status pursuant to section 501(c)(3) of the Internal Revenue Code, and which has as its primary purpose the preservation of land for historic, recreational, scenic, agricultural or open space opportunities, by and between a principal and straw party for the purpose of placing a mortgage or ground rent upon the premises, or on a correctional deed without consideration, or on a transfer to the United States, the Commonwealth of Pennsylvania, or to any of their instrumentalities, agencies or political subdivisions, by gift, dedication or deed in lieu of condemnation, or deed of confirmation in connection with condemnation proceedings, or reconveyance by the condemning body of the property condemned to the owner of record at the time of condemnation which reconveyance may include property line adjustments provided said reconveyance is made within one year from the date of condemnation, **leases,** or on a conveyance to a trustee under a recorded trust agreement for the express purpose of holding title in trust as security for a debt contracted at the time of the conveyance under which the trustee is not the lender and requiring the trustee to make reconveyance to the grantor-borrower upon the repayment of the debt, or a transfer within a family from a

sole proprietor family member to a family farm corporation, or in any sheriff sale instituted by a mortgagee in which the purchaser of said sheriff sale is the mortgagee who instituted said sale, or on a privilege, transaction, subject, occupation or personal property which is now or does hereafter become subject to a State tax or license fee.

53 P.S. § 6902(1) (emphasis added) (footnote omitted). Thus, while Section 2 of the LTEA broadly grants municipalities the authority to tax (as described therein), subsection (1) limits that grant by excluding the authority to tax, *inter alia*, leases.

The parties primarily disagree as to how Section 2(1) should be parsed—that is, what introductory language from Section 2(1) we should infer into the clause addressing leases. Lynnebrook argues the Ordinance is prohibited because we should parse the section as:

**Such local authorities shall not have authority by virtue of this act:**

**(1) To levy, assess, and collect ... any tax on ... leases.**

In support of its position, Lynnebrook offers four primary arguments: (1) the plain meaning of the statute; (2) even if the meaning is not plain, in light of the canons of construction, especially the rule against surplusage, Section 2(1) prohibits municipalities from taxing leases, (3) the last clause of Section 2(1)—the "catchall provision"—prohibits municipal taxation of leases; and (4) it is bad public policy to permit municipal taxation of leases.

■ Millersville, instead, suggests the following parsing:

**Such local authorities shall not have authority by virtue of this act:**

**(1) To levy, assess, and collect ... any tax on the transfer of real property when the transfer is by ... leases.**

Thus, Millersville argues, the LTEA exempts from taxation only leases which transfer real property, and there is no evidence any of Lynnebrook's residential leases effectuate

such a transfer. Accordingly, under Millersville's proposed construction, the Ordinance is permissible.

In determining which parsing is preferable, we are guided first and foremost by the Statutory Construction Act, 1 Pa.C.S.A. §§ 1501 *et seq.* The Act makes clear that the "polestar" of construction is determining the intent of the legislature. *Griffiths v. WCAB (Seven Stars Farm),* 596 Pa. 317, 338, 943 A.2d 242, 254 (2008); 1 Pa.C.S.A. § 1921(a). When the language of the statute is clear, that language is dispositive of legislative intent and so vitiates the need for further interpretation. *See* 1 Pa.C.S.A. § 1921(b).

Initially, both parties argue our interpretation should begin with a presumption in their favor, based on the strict construction rules of 1 Pa.C.S.A. § 1928. Lynnebrook asserts this case presents a tax *exception,* whereas Millersville contends it concerns a tax *exemption.* Our jurisprudence distinguishes between these two concepts. Where we determine the breadth of a taxing statute—whether a taxing authority is permitted by law to levy a particular tax—we consider whether a tax exception exists, and the presumption is in favor of the taxpayer. 1 Pa.C.S.A. § 1928(b)(3). By contrast, where we determine whether a person or property fits under a statutory provision enumerating exemptions from such taxing authority, we consider whether a tax exemption exists, and the presumption is in favor of the taxation authority. 1 Pa.C.S.A. § 1928(b)(5). In short, we presume in the absence of clear language to the contrary that the legislature did not intend to authorize a tax and, if they did, that they intended it to be levied universally.

Contending Section 2(1) is a tax exception, Lynnebrook asserts the relevant statutory language must be strictly construed against Millersville and undermines Millersville's contention that the legislature intended to permit a tax on the consummation of residential leases. In contrast, Millersville avers that the tax is permitted by the LTEA's general delegation of taxing authority to municipalities, and so Lynnebrook seeks an exemption from generally applicable taxation. Thus,

Millersville avers Section 2(1) of the LTEA must be strictly construed against Lynnebrook.

In interpreting the LTEA in this regard, we held, with respect to its language precluding local taxation of manufacturing, Section 2 of the LTEA should be construed strictly against the taxing authority—that is, that it is a tax exception rather than an exemption.[3] *Fischer v. City of Pittsburgh*, 383 Pa. 138, 118 A.2d 157 (1955). Our rationale in *Fischer* was instructive:

> On the one hand, municipal corporations can levy no taxes unless the power be plainly and unmistakably conferred by the sovereign state, and the grant of such right must be strictly construed and not extended by implication. But if the power to tax exists and the taxpayer is within the general language of the statute or ordinance imposing the tax, all provisions relied upon to establish an exemption from the tax should be strictly construed against the claim for exemption. The [LTEA] as amended authorizes the municipalities therein designated to impose taxes on certain persons, property and subjects *except* that they *shall not have authority* to impose a tax on goods and articles there manufactured, or on any privilege, act or transaction related to the business of manufacturing. It is obvious, therefore, that since the act does not give municipalities the authority to impose such taxes the exception in question is not an exemption provision but a limitation of the general authority to tax otherwise conferred. Any doubt, therefore, concerning the construction of the legislation must be resolved in favor of the taxpayer and against the city.

*Fischer*, 383 Pa. at 141–42, 118 A.2d at 158–59 (emphasis in original, citations omitted); *see also Golden Triangle Broad., Inc. v. City of Pittsburgh*, 483 Pa. 525, 534, 397 A.2d 1147, 1151 (1979) (reaffirming *Fischer*, though concluding that Golden Triangle Broadcasting was not engaged in "manufacturing").

---

**3.** Municipal taxes on goods or articles manufactured within the municipality are precluded by Section 2(4) of the LTEA, 53 P.S. § 6902(4).

*Fischer* counsels the statutory language at issue in the instant case should be construed as a tax exception—not a tax exemption—and thus construed against the taxing authority, Millersville. As quoted above, we therein interpreted the restrictive sections of the LTEA not as delimiting previously established taxing powers, but as clarifying the section investing municipalities with those powers. *Fischer,* 383 Pa. at 142, 118 A.2d at 159 ("the exception in question is not an exemption provision but a limitation of the general authority to tax otherwise conferred"). We emphasized that the legislature directed that municipal taxing authority "shall not" include the authority to tax certain types of manufactured goods. *Id.* In relevant part, the structure of the exception for manufacturing in Section 2(4) is the same as the structure of the general exception set forth in Section 2(1), and neither Millersville nor the courts below have provided us any basis on which to distinguish them.[4]

Our decision is reinforced by the fact that the introduction to Section 2 and Section 2(1) are contemporaneously enacted sections of the same statute. Moreover, Section 2 explicitly states the transactions enumerated therein do not fall within the taxing authority established by its introductory language. 53 P.S. § 6902 (directing that "Such local authorities shall not have authority by virtue of this act" to tax certain types of transactions, including those in Section 2(1)). Accordingly, we proceed to consider the lease exception, mindful that under *Fischer* any doubt in the interpretation of the statutory language must be resolved in favor of Lynnebrook and against Millersville.[5]

4. We are cognizant of Millersville's contention that lease transactions are within the general scope of taxing powers established by the broad introductory language of Section 2 of the LTEA. Brief for Millersville at 14 n. 5. We thus allow there is some appeal to the argument that the introductory language of Section 2 grants taxing powers and should be construed against the municipalities, while Section 2(1) restricts authority within the general language of the taxing statute and should be construed against the taxpayer. Nonetheless, we rejected that interpretation of the LTEA in *Fischer* and are constrained to do so again here.

5. Millersville does not ask that we re-examine *Fischer.*

As we discussed above, Lynnebrook offers that we should parse the statute to forbid local authorities "To levy, assess, and collect ... any tax on[:] ... leases." This construction would preclude the Ordinance. Millersville, on the other hand, contends we should parse the statute to forbid local authorities "To levy, assess, and collect ... any tax on the transfer of real property when the transfer is by[:] ... leases." Assuming *arguendo* that the leases at issue in this case are not "transfer[s] of real property" under the Act, this parsing would permit the Ordinance. However, while both proffered interpretations are plausible, neither leads to a fully grammatical result when applied to the other clauses in the statute, since those clauses each include introductory language of their own (beginning "or on a transfer between" or "or on a conveyance to," etc.). The "leases" clause, lacking any other language at all, is *sui generis,* and thus a parsing of Section 2(1)'s introductory text which renders the clause immediately under consideration comprehensible will, if applied to other clauses, render those other clauses incomprehensible.

Moreover, Lynnebrook avers—and we agree—that "leases" must be interpreted as an independent clause, not part of the exclusions preceding or succeeding it, as in either case, the result is ungrammatical and incoherent. To interpret "leases" as part of the previous clause, we would have to read that clause as prohibiting municipal taxation of the:

> reconveyance by the condemning body of the property condemned to the owner of record at the time of condemnation which reconveyance may include property line adjustments provided said reconveyance is made within one year from the date of condemnation, leases.

Though the Borough of Kutztown argues we should adopt this interpretation, it would render the term leases incoherent. Brief for Borough of Kutztown as *Amicus Curiae,* at 8. Moreover, to interpret leases as part of the clause succeeding it, we would have to interpret that clause as reading:

> leases, or on a conveyance to a trustee under a recorded trust agreement for the express purpose of holding title in trust as security for a debt contracted at the time of the

conveyance under which the trustee is not the lender and requiring the trustee to make reconveyance to the grantor-borrower upon the repayment of the debt.

This, too, would be incoherent.

Indeed, Section 2(1) is difficult enough to parse that deciding the instant case on the basis of its plain meaning would do violence to our everyday understanding of the term. It is not plain which introductory language the legislature intended to be inferred into the clause dealing with leases; some such language must have been intended to be read into that clause, but nothing in the LTEA indicates which. Thus, the statute is not clear, and further judicial interpretation is appropriate.

Where, as here, we cannot determine the Legislature's intent from the language of the statute itself, we may discern the Legislature's intention by reference to, *inter alia:*

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(c). Here, as we noted in *Fischer,* Section 2(1) of the LTEA was enacted to restrict the grant of taxation authority in Section 2. Thus, considering the necessity for the section (restricting the grant of authority), the object to be attained (restricting municipal taxation authority) and the mischief to be remedied (overweening municipal authorities imposing taxes beyond the LTEA's authorization) supports an interpretation that most restricts the taxing authority—that is, the broadest interpretation of the lease exception: an unqualified prohibition on the taxation of leases. 1 Pa. C.S.A. § 1921(c)(1), (3), (4). Moreover, interpreting the lease

exception narrowly—prohibiting only leases transferring real property—as Millersville would have us do, would potentially expose the thousands of residential lease transactions consummated in the Commonwealth every year to hitherto unanticipated tax liability. This consequence is deeply inconsistent with the restrictive purpose of Section 2(1). *See* 1 Pa.C.S.A. § 1921(c)(6). Accordingly, the interpretive tools set out by the legislature support Lynnebrook's parsing of the LTEA.

Against this weight of interpretive authority, Millersville and the lower courts simply rely on the canon *ejusdem generis*—that general terms preceded by enumerated classifications should be construed to be restricted by those classifications. *See McClellan v. Health Maintenance Organization of Pennsylvania,* 546 Pa. 463, 473, 686 A.2d 801, 806 (1996). In doing so, however, Millersville and the lower courts presume the introductory qualifier in Section 2(1)—"on the transfer of real property"—is to be applied to each of the following clauses. Yet, as we have already discussed, applying this prefatory language to the other clauses would yield the following construction: it would preclude taxation on "the transfer of real property when the transfer is by or on a transfer to . . . ." This construction is plainly incoherent.

For the foregoing reasons, we conclude that, at the very least, reasonable doubts as to the proper interpretation of the lease exception exist, even after we apply the Statutory Construction Act to its uncertain text. Precedent is clear we must resolve those doubts in favor of the taxpayer. *Fischer; see also Commonwealth v. High Welding Co.,* 428 Pa. 545, 550, 239 A.2d 377, 379 (1968) (where we consider a taxing statute's breadth, as in an exception case, "if there is a reasonable doubt as to [the statute's] construction or application to a particular case, the doubt must be resolved in favor of the taxpayer").

Accordingly, while welcoming legislative efforts to clarify the issue, we hold Section 2(1) of the LTEA prohibits the municipal taxation of leases, and thus the Ordinance violates

the LTEA.[6] As a result, we conclude the Commonwealth Court erred in affirming the grant of summary judgment in favor of Millersville and against Lynnebrook.[7] Thus, we reverse the judgment of the Commonwealth Court and remand the matter for further proceedings consistent with this opinion.

Jurisdiction relinquished.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER and McCAFFERY join the opinion.

6. Because we find the Ordinance violates the LTEA on this basis, we need not address Lynnebrook's additional arguments that the Ordinance violates the "catchall" provision of Section 2(1), or is against public policy.

7. The Commonwealth Court concluded that our precedent states a school district may tax leases under the LTEA. *Lynnebrook*, 911 A.2d at 199 (citing *City of Harrisburg, supra*). However, we struck the tax at issue in *City of Harrisburg* under the Uniformity Clause of the Pennsylvania Constitution, and did not consider whether it violated Section 2(1) of the LTEA. Accordingly, we do not consider our decision in *City of Harrisburg* to have controlling effect in the matter *sub judice*.