[J-55-2015] [MO: Saylor, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| GEORGE D. FISH, STEPHEN HRABRICK AND JONATHAN A. BRISKIN, | : | No. 29 MAP 2015 |
| | : | |
| | : | Appeal from the Order of the |
| Appellees | : | Commonwealth Court dated September |
| | : | 19, 2014 at No. 1940 CD 2013 Affirming |
| | : | in Part & Reversing in Part the Order of |
| v. | : | the Montgomery County Court of |
| | : | Common Pleas, Civil Division, dated |
| | : | September 23, 2013 at No. 2012-02530 |
| TOWNSHIP OF LOWER MERION, | : | |
| | : | ARGUED: September 10, 2015 |
| Appellant | : | |

## DISSENTING OPINION

**MR. JUSTICE EAKIN**                    **DECIDED: December 21, 2015**

I agree with the Majority that a tax on a privilege and a tax on a transaction are categorically distinct in our Commonwealth. However, where the amount of a privilege tax is a fixed percentage of transactional income, it becomes a titular distinction with no actual difference. Where the tax on the "privilege" is determined to the penny by the amount of non-taxable income, one is not paying tax on a privilege at all — one is paying tax on lease income, which defeats the statutory prohibition.

The Majority's interpretation of the Local Tax Enabling Act (LTEA), 53 P.S. § 6924.301.1, allowing the taxing body to exempt its tax from the prohibition of the statute, conflicts with our analysis in *Lynnebrook & Woodbrook Assocs., L.P. v. Borough of Millersville*, 963 A.2d 1261 (Pa. 2008). In *Lynnebrook*, we unanimously found the provision to be "an unqualified prohibition on the taxation of leases." *Id.* at 1267 (citation omitted). Apparently the "unqualified prohibition" is not so unqualified that it

cannot be avoided simply by retitling it, vitiating the plain language of the LTEA's prohibition.  A tax is to be analyzed by its practical operation and effect, not merely by its label.  *Commonwealth v. E. Motor Express, Inc.*, 157 A.2d 79, 89 (Pa. 1959).  Stated another way, substance trumps labelling in the realm of tax law; what counts is what you do, not what you call it.  What this municipal tax does, as applied to Appellees, is to impose a tax based solely on income from leases.[1]

The LTEA, 53 P.S. § 6924.301.1(a), grants municipalities the authority to tax "persons, transactions, occupations, privileges, subjects and personal property" within their respective jurisdictions; where it is unclear whether the legislature intended to permit municipal taxation of some privilege, act, or *res*, we must err on the side of strict interpretation against the government and exclude the subject from taxation until such time as the legislature issues a clear grant of authority.  *Marson v. City of Philadelphia*, 21 A.2d 228, 230-31 (Pa. 1941).  Likewise, in *Lynnebrook*, we concluded § 6924.301.1(f)(1) was an exception to such authority, as opposed to an exemption; therefore, the provision must be strictly construed in favor of the taxpayer and against the taxing authority.  *Lynnebrook*, 963 A.2d at 1267; 1 Pa.C.S. § 1928(b)(5).

The Majority opines that legislative language barring taxation of "privileges, acts, or transactions," stated elsewhere in the statute, serves as contextual indicia that the legislature intended taxation on the privilege of leasing to be permissible.  Majority Slip

---

[1] Where a business's overall income was derived from multiple activities, only one of which was proscribed by the LTEA, this Court has held the proscribed income stream may be subsumed by the business's overall revenue, and taxed indirectly. *Cheltenham Twp. v. Cheltenham Cinema, Inc.*, 697 A.2d 258, 262 (Pa. 1997).  However, even where we did so, we expressly recognized, albeit in *dictum*, that the LTEA would prohibit applying that same tax to a business whose income stream was *wholly* derived from an activity excepted from taxation.  *Id.* at 261.  That is precisely the situation presented here.

Op., at 9. Under the maxim *expressio unius est exclusio alterius*,[2] this reasoning is not without its allure, but appears contrary to our precedent. Specifically, in *Lynnebrook*, we determined that the exception provision was enacted by the legislature to remedy the "mischief" caused when "overweening municipal authorities impos[e] taxes beyond the LTEA's authorization." *Lynnebrook*, 963 A.2d at 1267. To overween is to regard one's own thinking too highly — as in trying to think of a way to elude a clear statutory prohibition by titling a tax on income as a tax on the privilege of earning that income.

Is there a difference between taxing income and taxing the *privilege* of income? In theory, they are distinguishable, as my colleagues aptly point out, but in practice, both involve exactly the same thing — paying the municipality a percentage of the profit from the lease. The only difference is title and timing, and if taxing authorities can avoid unambiguous legislative prohibitions simply by renaming the tax and rescheduling its collection, what is the purpose of the exception in the first place? Is this really construing the statute in favor of the taxpayer, who must now reflect, "There's a statute that says my overweening municipality can't tax my lease income, but I'm writing them a check to pay a 'privilege' tax based entirely on the same exact income they can't tax? What kind of double talk is this?" If a landlord makes another dollar on a lease, they have to pay more tax — what increased, their privilege or their lease income?

If the privilege tax were a fixed amount, or scaled to some factor or category of income that is not excepted from taxation, the distinction between transaction and privilege would be defensible. However, the amount of the privilege tax here is precisely dependent on the amount of income from leases and nothing else at all. If we are to interpret in favor of the taxpayer, can we not see through the charade? When a

---

[2] Expression of one thing is the implied exclusion of another thing.

tax by whatever name is manifestly a *de facto* tax on matters which the state does not allow a municipality to tax, let the scales fall from our eyes.

The Majority's holding allows municipalities to rely on semantic distinctions to reframe *ultra vires* taxation, circumventing express legislative prohibitions and validating otherwise impermissible levies. Plainly put, after its holding here, the nominal reaffirmation that *Lynnebrook* is good law, to the extent that taxes levied directly on leases are still prohibited, is meaningless. The framework for collecting the prohibited tax by calling it something else is established.[3] By engineering its lease tax in the guise of a privilege tax, indirectly collecting the same revenue it could not collect directly, the municipality may frustrate the legislature's intention that lease income should be spared from local taxation.

The Bard once mused: "What's in a name? That which we call a rose by any other name would smell as sweet." William Shakespeare, *Romeo and Juliet*, Act II, Scene II. In the realm of tax law, the aphorism holds true, though the odor may be less honeyed. Irrespective of labels, taxation of lease income under the LTEA is prohibited; that tax smells the same, whether levied directly, as in *Lynnebrook*, or repackaged as an indirect privilege tax, as here. For whatever reason, municipal taxation on leases

---

[3] The Majority states a contrary holding would render the legislature's use of the phrase "privileges, acts, or transactions" mere surplusage. Majority Slip Op., at 8. However, it neglects to give the same treatment to the legislature's choice of the term, "any" tax, although the legislature uses the distinct term, "a" tax, in other provisions of the LTEA. The Majority takes the position that there is no practical difference between "a" tax and "any" tax, comparing this distinction to the difference between singular and plural terms, which are used interchangeably in statutory text. *Id.* However, the plural of "a tax" is "taxes," not "any tax." Under the rules of statutory construction, we are obliged to give effect to all terms and provisions in a statute, wherever possible. 1 Pa.C.S. § 1921(a). The Majority properly notes that we may not assume the legislature intended any words to be surplusage, and thus to give effect to all terms and provisions in the statute, we must interpret "a tax" to mean a specific tax, and "any tax" to mean a tax of whatever kind.

was barred, specifically, unequivocally, and clearly by the legislature; such is established by the plain language of the LTEA, and we should not place our imprimatur on municipal action that circumvents such an obvious legislative prohibition.

You cannot turn a duck into a goose by putting a sign that says "goose" around its neck — it's still a duck.

Mr. Justice Stevens joins this dissenting opinion.