Turf Club OP Co. d/b/a                    :
Valley Forge Turf Club, Inc.,             :
                          Petitioner      :
                                          :
              v.                          :
                                          :
Department of Health                      :
Bureau of Health Promotion                :
and Risk Reduction,                       :   No. 1834 C.D. 2017
                          Respondent      :   Argued: September 14, 2018


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge (P.)

OPINION BY
JUDGE COVEY                                   FILED:  October 9, 2018


Turf Club OP Co. d/b/a Valley Forge Turf Club, Inc. (Turf Club) petitions this Court for review of the Pennsylvania Department of Health's (Department) November 16, 2017 Final Agency Determination and Order (Determination) denying Turf Club's application for an exception (Exception Application) to the general public smoking ban under the Clean Indoor Air Act (CIAA).[1]  The issue before this Court is whether the Department erred by concluding that Turf Club is not a "drinking establishment" as that phrase is defined by the CIAA.  After review, we reverse.

The facts of this case are not in dispute.  Turf Club operates an off-track pari-mutuel wagering facility in Oaks, Pennsylvania, which sells and serves alcohol pursuant to a restaurant liquor license originally held by Bensalem Racing Association, Inc. (Bensalem), and subsequently transferred to Turf Club in late 2016 or early 2017.  Turf Club applied to the Pennsylvania Liquor Control Board (PLCB)

_____

[1] Act of June 13, 2008, P.L. 182, 35 P.S. §§ 637.1-637.11.

for a new restaurant liquor license to cover its recently-built Oaks facility. The PLCB approved the application on January 15, 2016, and issued Turf Club License No. OWR-44. *See* Reproduced Record (R.R.) at 8a-10a, 59a.

On May 25, 2017, Turf Club applied to the Department's Bureau of Health Promotion and Risk Reduction (Bureau) for a CIAA exception to allow smoking in its new facility because it is a Type I Drinking Establishment.[2] *See* R.R. at 3a-11a. On July 10, 2017, based solely on the record without a hearing, the Bureau denied the Exception Application because "[t]he CIAA does not provide for an establishment exception to be granted to the holder of an Off-Track Wagering Restaurant (OWR) liquor license."[3] R.R. at 38a. On November 16, 2017, the Department issued its Determination, upholding the Bureau's decision. *See* R.R. at 92a-108a. On December 15, 2017, Turf Club appealed to this Court.[4]

---

[2] The Department classifies "drinking establishment[s]," as that phrase is defined in Section 2(1) of the CIAA (relating to establishments), as Type I Drinking Establishments, and those defined in Section 2(2) of the CIAA (relating to enclosed areas within an establishment) as Type II Drinking Establishments. Turf Club applied for a Type I Drinking Establishment exception. *See* Determination at 3 n.3.

After the Bureau notified Turf Club that the filed renewal application should have been a new application due to the new company name and liquor license number, Turf Club submitted a new application. *See* R.R. at 12a-13a.

[3] On July 17, 2017, Turf Club filed a request for reconsideration with the Department. When the Department failed to act on the request within 30 days, Turf Club appealed to the Commonwealth Court on September 15, 2017. On October 6, 2017, both Turf Club and the Department requested this Court to remand the matter for a final determination, which the Court granted on October 11, 2017. On October 12, 2017, the parties filed a joint motion with the Department for expedited review. The motion was granted, and the Department was ordered to issue an adjudication on or before November 17, 2017.

[4] On December 29, 2017, Turf Club filed an application for a preliminary injunction, which the Department opposed. On March 2, 2018, this Court denied the preliminary injunction. On May 16, 2018, Turf Club filed a motion with this Court for expedited consideration, which the Department opposed. On June 15, 2018, the Court denied Turf Club's motion.

"As the instant case poses a question of statutory construction, which is a pure question of law, our standard of review is *de novo*, and our scope of review is plenary." *Lynnebrook & Woodbrook Assocs., L.P. v. Borough of Millersville*, 963 A.2d 1261, 1262 n.2 (Pa. 2008).

Initially, Section 3 of the CIAA provides, in relevant part:

**(a) General rule.--**Except as set forth under subsection (b), an individual may not engage in smoking in a public place. . . .

 **(b) Exceptions.--**Subsection (a) shall not apply to any of the following:

. . . .

(10) A drinking establishment.

. . . .

**(c) Conditions and qualifications for exceptions.--**

(1) In order to be excepted under subsection (b), a drinking establishment . . . must submit a letter, accompanied by verifiable supporting documentation, to the [D]epartment claiming an exception under subsection (b). Exception shall be based upon the establishment's books, accounts, revenues or receipts, including those reported to the Department of Revenue for sales tax purposes, from the previous year or stated projected annual revenues, which shall be verified within six months.

35 P.S. § 637.3.

Section 2(1) of the CIAA defines "drinking establishment" as

An establishment which:

(i) operates pursuant to [a] . . . restaurant liquor license . . . under the [A]ct of April 12, 1951[, P.L. 90, *as amended*, 47 P.S. §§ 1-101 – 10-1001]), known as the Liquor Code;

(ii) has total annual sales of food sold for on-premises consumption of less than or equal to 20% of the combined gross sales of the establishment; and

(iii) does not permit individuals under 18 years of age.

35 P.S. § 637.2(1). Accordingly, the CIAA authorizes the Department to grant an exception to permit smoking at "drinking establishment[s]."

Turf Club argues that the Department erred by concluding that it does not qualify as a Type I Drinking Establishment. Turf Club specifically asserts that the Department improperly interpreted Section 2(1) of the CIAA and added statutory requirements not found therein.

In its Determination, the Department made the following undisputed findings of fact (FOF):

> • "Turf Club, with its [Exception A]pplication, enclosed [] approval letters issued by the PLCB on January 15, 2016 . . . . ([*See*] R.R. at 6[a]-9[a])." Determination FOF 9.
>
> • "Turf Club provided the Department copies of the Master License effective May 1, 2017, issued to Turf Club for the location Valley Forge Turf Club. ([*See*] R.R. at 74[a]-76[a])." Determination FOF 19.
>
> • "Turf Club supplied, as required, a worksheet setting forth the total gross sales and the total food sales and verified that no one under the age of 18 years of age [is permitted]. ([*See*] R.R. at 5[a, 7a]). . . . [Turf Club's] gross sales figures include much more than food and alcohol. Finally, . . . no one under the age of 18 is allowed . . . . " Determination at 14.[5]

Further, the Department expressly acknowledged that Turf Club submitted the documentation required by Section 3(c)(1) of the CIAA in support of its Exception Application, and admitted "it would appear [Turf Club] met the requirements for an exception." Determination at 9. Notwithstanding, the Department concluded that "Turf Club fail[ed] to meet its burden of pro[ving] that it is entitled to a [Type I] Drinking Establishment [e]xception under [Section 3(b)(10) of the CIAA]." Determination at 16.

---

[5] Although this and another finding were made in the Determination's "Discussion" section, Department FOF 20 states: "Additional conclusions of [f]act set forth in the Discussion section of this [Determination] are incorporated herein." Determination at 6.

4

The Department contends that, although **Turf Club "has total annual sales of food sold for on-premises consumption of less than or equal to 20% of the combined gross sales of the establishment**[,]" 35 P.S. § 637.2(1)(ii) (emphasis added), **and "does not permit individuals under 18 years of age**[,]" 35 P.S. § 637.2(1)(iii) (emphasis added), Turf Club does not possess the type of liquor license that satisfies the CIAA's requirements for a Type I Drinking Establishment exception. Consequently, **this Court must determine whether, as Section 2(1)(i) of the CIAA requires, the Turf Club "operates pursuant to [a] . . . restaurant liquor license . . . under the . . . Liquor Code**[.]" 35 P.S. § 637.2(1)(i) (emphasis added).

At the outset, in order to sell liquor or malt or brewed beverages for on-premises consumption, an entity must hold a PLCB-issued retail liquor license. *See* Sections 401(a) and 491(1) of the Liquor Code, 47 P.S. §§ 4-401(a), 4-491(1).[6] Sections 401(a) and 403(a) of the Liquor Code generally limit the retail sales of liquor and malt or brewed beverages to hotel, restaurant and club licensees and other licenses and permits derived therefrom.[7] 47 P.S. §§ 4-401(a), 4-403(a). Section 102 of the Liquor Code defines "restaurant," in pertinent part, as

---

[6] Section 401(a) of the Liquor Code authorizes the PLCB to issue retail liquor licenses for the on-premises sale of liquor and malt or brewed beverages by restaurants, and for the sale of limited amounts of malt or brewed beverages to-go. *See* 47 P.S. § 4-401(a). Section 491(1) of the Liquor Code makes it unlawful to sell any alcoholic beverages in the Commonwealth, except in accordance with the Liquor Code and the PLCB's Regulations. 47 P.S. § 4-491(1).

[7] Section 401(a) of the Liquor Code states:

Subject to the provisions of this [Liquor Code] and [the PLCB's R]egulations promulgated under [the Liquor Code], the [PLCB] shall have authority to issue a retail liquor license for any premises kept or operated by a hotel, restaurant or club and specified in the license entitling the hotel, restaurant or club to purchase liquor from a Pennsylvania Liquor Store and to keep on the premises such liquor and, subject to the provisions of [the Liquor Code] and the regulations made thereunder, to sell the same and also malt or brewed beverages to guests, patrons or members for consumption on the hotel, restaurant or club premises. . . . Such licenses shall be known as hotel

5

> a reputable place operated by responsible persons of good reputation and habitually and **principally used for the purpose of providing food for the public**, the place to have an area within a building of not less than four hundred square feet, equipped with tables and chairs, including bar seats, accommodating at least thirty persons at one time.

47 P.S. § 1-102 (emphasis added).

Neither the Liquor Code nor the PLCB's Regulations specifically provide for or define an off-track wagering restaurant liquor license. Notwithstanding, Section 405 of the Liquor Code authorizes pari-mutuel wagering facilities that wish to offer alcohol for sale on their premises to apply for restaurant licenses:

> Every application for a **restaurant liquor license for a nonprimary**[8] **pari-mutuel wagering location** or a racetrack shall be accompanied by an applicant's fee of five thousand dollars ($5,000) for the first year of a licensing period. Thereafter, the nonprimary pari-mutuel wagering

---

> liquor licenses, restaurant liquor licenses and club liquor licenses, respectively.

47 P.S. § 4-401(a).

Section 403(a) of the Liquor Code provides, in relevant part:

> Every applicant for a hotel liquor license, restaurant liquor license or club liquor license . . . shall file a written application with the [PLCB] . . . . Every such application shall contain a description of that part of the hotel, restaurant or club for which the applicant desires a license and shall set forth such other material information, description or plan of that part of the hotel, restaurant or club where it is proposed to keep and sell liquor as may be required by the [R]egulations of the [PLCB].

47 P.S. § 4-403(a).

The Department's representations notwithstanding, *see* Department Br. at 17, 19-21, this Court has found no statutory authority under which the PLCB may issue "tavern" or "bar" licenses that allow licensees to sell only alcoholic beverages.

[8] A racetrack is a primary location for pari-mutuel wagering. 47 P.S. § 1-102 (providing definitions for "nonprimary pari-mutuel wagering location" and "racetrack").

6

location or the racetrack shall be **subject to the above[-]stated fees for restaurant licenses** for each year of a licensing period.

47 P.S. § 4-405(e) (emphasis added).

Here, the Department specifically found based on clear record evidence that Turf Club applied for and indeed obtained such an off-track wagering *restaurant liquor license*. Nevertheless, the Department claims that Turf Club's off-track wagering restaurant liquor license is not a restaurant liquor license because it is a distinct license that is treated differently than other restaurant liquor licenses. The Department further contends, based upon its statutory interpretation of the CIAA, that if Turf Club's primary purpose was anything other than wagering, it would not have been issued an off-track wagering restaurant liquor license. Turf Club counters that the type of restaurant liquor license it holds is irrelevant for purposes of the CIAA or the Liquor Code, since the Liquor Code does not recognize it as distinct from a restaurant liquor license issued for any other type of facility or specifically define an off-track wagering restaurant liquor license. This appears to be an issue of first impression.

Resorting to the Statutory Construction Act of 1972 (Statutory Construction Act),[9] the Department analyzed what the General Assembly *may have* intended by the term "drinking establishment" in Section 3(b)(10) of the CIAA. The Department relied upon the separate dictionary definitions of "drinking" and "establishment" to conclude that "the principle line of business at a drinking establishment is the service of alcoholic beverage[s] to its patrons" and, thus, for a drinking establishment to qualify for a smoking ban exception under Section 3(b)(10) of the CIAA, it must "be a public place where the intake of alcoholic beverage[s] [i]s the primary business activity." Determination at 11. The Department concluded that

---

[9] 1 Pa.C.S. §§ 1501-1991.

7

since "Turf Club is primarily an off-track betting establishment, with liquor and food tangentially part of the business[,]" the General Assembly did not intend for it to qualify for the smoking ban exception. Determination at 14.

The Pennsylvania Supreme Court has [] made clear:

> As we noted in *Commonwealth . . . v. Cartwright, . . . 40 A.2d 30 ( [Pa.] 1944),*
>
> > [t]he intention and meaning of the Legislature must primarily be determined from the language of the statute itself, and not from conjectures aliunde. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. This principle is to be adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the [L]egislature intended to enact something very different from that which it did enact.
>
> *Id.* at 33 (citation omitted).

*Roe v. Pa. Game Comm'n*, 147 A.3d 1244, 1253 (Pa. Cmwlth. 2016) (quoting *Mohamed v. Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1194 (Pa. 2012)).

In the instant case, the Department recognized but eschewed the Statutory Construction Act's directives that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[,]" 1 Pa.C.S. § 1903(a), and "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see also* Determination at 9-11. The Pennsylvania Supreme Court has ruled: "If the statute's plain language is unambiguous, [courts] must apply it without employing familiar canons of construction and without

8

considering legislative intent." *Dubose v. Quinlan*, 173 A.3d 634, 643 (Pa. 2017). "Furthermore, 'if the General Assembly defines words that are used in a statute, those definitions are binding.'" *Pa. Pub. Util. Comm'n v. Andrew Seder/The Times Leader*, 139 A.3d 165, 173 (Pa. 2016) (quoting *Pa. Associated Builders & Contractors, Inc. v. Commonwealth Dep't of Gen. Servs.,* 932 A.2d 1271, 1278 (Pa. 2007)).

Thus, because the General Assembly specifically defined in Section 2(1) of the CIAA what it intended in Section 3(b)(10) of the CIAA by the term "drinking establishment," the Department erred by "disregard[ing it] under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Accordingly, this Court need only decide whether the Department erred in concluding that Turf Club does not "operate[] pursuant to" a PLCB-issued "restaurant liquor license[.]"[10] 35 P.S. § 637.2(1)(i). We begin with the binding definition of "drinking establishment" in Section 2(1) of the CIAA.

The Liquor Code reflects the General Assembly's intent that certain entities not typically thought of as "restaurants" may obtain restaurant liquor licenses. For instance, just as Section 405 of the Liquor Code authorizes the PLCB to issue restaurant liquor licenses for nonprimary pari-mutuel wagering locations, Section 413(a) of the Liquor Code authorizes the PLCB "to issue a restaurant liquor license to performing arts facilities[,]" 47 P.S. § 4-413(a), and Section 414 of the Liquor Code allows continuing care retirement communities to obtain restaurant liquor licenses, *see* 47 P.S. § 4-414, even though they are not typically considered businesses "principally used for the purpose of providing food for the public[.]" 47 P.S. § 1-102. As it does for other non-traditional restaurant entities, the Liquor Code simply states that an off-track wagering company may obtain a restaurant liquor license to sell alcoholic beverages at its premises. Accordingly, despite that the PLCB issues

---

[10] The Department's position is, in essence, an impermissible collateral attack on the PLCB's transfer of Bensalem's restaurant liquor license to Turf Club.

restaurant liquor licenses to varying business entities and gives them specific subset designations related thereto (specifically, Off-Track Wagering Restaurant (OWR) liquor license rather than Restaurant (R) liquor license), the Liquor Code itself does not grant to them anything other than restaurant liquor licenses.

If it was the General Assembly's intent, as the Department claims, to preclude off-track wagering restaurant liquor licenses from restaurant liquor licenses and/or to distinguish them from other restaurant liquor licenses as not "operat[ing] pursuant to [a] . . . restaurant liquor license . . . under the . . . Liquor Code[,]" 35 P.S. § 637.2(1)(i), it was clearly within its authority to so state, but it did not. Moreover, since this Court lacks the authority to expand statutes beyond their terms, we must decline to superimpose a specificity requirement into the Liquor Code for restaurant liquor licenses that does not exist.[11] *See Weaver v. Harpster*, 975 A.2d 555 (Pa. 2009).

---

[11] "We are mindful that, when ascertaining the General Assembly's intent with regard to ambiguous statutory language, courts are to give strong deference to an administrative agency's interpretation of a statute that the agency is charged to enforce." *Dixon v. Workers' Comp. Appeal Bd. (Medrad, Inc.)*, 134 A.3d 518, 526 (Pa. Cmwlth. 2016) (quoting *Velocity Express v. Pa. Human Relations Comm'n,* 853 A.2d 1182, 1185 (Pa. Cmwlth. 2004)). However, the Department is not the agency that is charged with interpreting and enforcing the Liquor Code. Rather, the Liquor Code empowers the PLCB and the PLCB's Bureau of Liquor Control Enforcement with such authority. *See* Section 211 of the Liquor Code, 47 P.S. § 2-211. Therefore, the Department's interpretation of the term "restaurant," as used and defined in the Liquor Code, is entitled to no deference from this Court.

Moreover, because Section 2(1) of the CIAA is clear, the Department's interpretation thereof is not entitled to deference. *Seeton v. Pa. Game Comm'n*, 937 A.2d 1028, 1037 (Pa. 2007). ("[C]ourts' deference never comes into play when the statute is clear.").

Finally, at argument before this Court, the Department's counsel represented that the exception has been granted in the past to other similar off-track wagering facilities, including Bensalem (which transferred the subject liquor license to Turf Club), but the Department has since changed its policy. Notwithstanding that agencies are authorized to change their policies,

> [a]ny deference . . . must yield to . . . evidence that the Department's 'new' statutory interpretation is an abrupt *volte face* from the interpretation it had [previously] followed . . . . *See P[a.] Sch[.] B[ds.] Ass['n, Inc. v. Pub[.] Sch[.] Emp[s.]' Retirement B[d.], . . .* 863 A.2d 432, 441 ([Pa.] 2004) (acknowledging that an agency's reversal

10

Under the circumstances presented here, this Court holds that Turf Club's off-track wagering restaurant liquor license is a restaurant liquor license and, therefore, Turf Club "operates pursuant to [a] . . . restaurant liquor license . . . under the . . . Liquor Code[,]" 35 P.S. § 637.2(1)(i). Because Turf Club "operates pursuant to" a PLCB-issued "restaurant liquor license[,]" 35 P.S. § 637.2(1)(i), Turf Club satisfied the three requirements to qualify as a "drinking establishment" under Section 2(1) of the CIAA. Accordingly, the Department erred as a matter of law by denying Turf Club's Exception Application for a smoking ban exception under Section 3(b)(10) of the CIAA.

For all of the foregoing reasons, the Department's Determination is reversed.

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

---

of a decades-old interpretive position 'might affect the level of deference this Court would otherwise accord the administrative interpretation.').

*RAG Cumberland Res. LP v. Dep't of Envtl. Prot.*, 869 A.2d 1065, 1072 n.11 (Pa. Cmwlth. 2005). Further, "[r]eviewing courts have the discretion to accept or reject the agency's general statement of policy, depending on how accurately the interpretation reflects the meaning of a statute." *Cash Am. Net of Nevada, LLC v. Dep't of Banking*, 8 A.3d 282, 297 (Pa. 2010).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Turf Club OP Co. d/b/a :
Valley Forge Turf Club, Inc., :
               Petitioner :
                   :
          v. :
                   :
Department of Health :
Bureau of Health Promotion :
and Risk Reduction, : No. 1834 C.D. 2017
            Respondent :

## O R D E R

AND NOW, this 9th day of October, 2018, the Pennsylvania Department of Health's November 16, 2017 Final Agency Determination and Order is reversed.

_____
ANNE E. COVEY, Judge